John Cooper, Jr., and Abram Gordon, Administrators of Isaac W. Graham, deceased, *v.* James R. Eyrich and Calvin R. Eyrich, trading as James R. Eyrich & Brother, Appellants.

*Contract of decedent—Mispayment to widow—Set-off—Quasi administration.*

An executory contract was made by decedent to deliver pork to defendants. After his death, pork, belonging to the estate, was delivered by the widow and payment made to her and not to the administrator. *Held*, in a suit by the administrator to recover the price of the pork, that a verdict for the plaintiff would have been properly directed had allowance been made for a set-off of so much of the money received by the widow as was applied in quasi administration by her for the payment of debts due by the decedent, and which payments, if properly made, were in relief of the estate.

Argued Nov. 18, 1897. Appeal, No. 130, Oct. T., 1897, by defendants, from judgment of C. P. Chester Co., April T., 1896, No. 42, on verdict for plaintiff. Before RICE, P. J., WICKHAM, BEAVER, ORLADY, SMITH and PORTER, JJ. Reversed.

Assumpsit for goods sold and delivered. Before WADDELL, P. J.

Graham, the decedent, made a contract for the sale of pork, which was executed by the widow and payment made to her and not to the administrators, the plaintiffs in this suit.

The widow subsequently claimed and was allowed her exemption, and the auditor surcharged the administrators with the price of the pork received by the widow and not accounted for by her to the administrators.

There was evidence tending to show that the widow had expended a portion of the money received by her for the pork in liquidation of certain debts of the decedent. The court directed a verdict for the plaintiffs.

Verdict and judgment for plaintiffs for $170.23. Defendants appealed.

*Errors assigned* among others were, (1) to the action of the court in directing a verdict for the plaintiffs. (6) Refusal of

defendants' seventh point, which point was as follows : "If from the money received from Eyrich & Brother, the widow of Isaac W. Graham, paid the funeral expenses or any other debts properly due by the administrators, thereby relieving the estate from such payments, the defendants should have credit for that amount in this action, and be relieved to that extent from the claim of the plaintiffs."

*H. H. Gilkyson,* for appellants.

*J. Frank E. Hause,* for appellees.

OPINION BY BEAVER, J., December 13, 1897 :

Graham, the decedent, made a verbal contract with the defendants for the sale of pork, to be delivered at sundry times. One delivery was made during his lifetime, for which a check was given, payable to his order. After his death, of which the defendants had knowledge, the check so given was surrendered and, in its stead, another check, payable to the order of the person returning it, was given. Subsequent deliveries of pork were made by sundry persons and paid for at the time by checks made payable to the order of the persons delivering it. Three deliveries, aggregating in value $170.23, were made, the checks for which, as appears in the testimony, were all paid and the money received thereon delivered to the widow of the decedent who was in possession of his personal property from the time of his death until letters of administration were issued, subsequently to the delivery of the pork. The money so received by the widow was used, in part at least, in the payment of the funeral expenses of the decedent, which, as appears by the testimony of one of the administrators, exceeded $100.

Upon this state of facts, the court below directed the jury to find a verdict for the plaintiffs, the administrators of the decedent, for the amount of their claim, $170.23, adding: "This may be wrong. It depends altogether upon the law involved in the case. My impression of the law, as it now exists, is in favor of the plaintiffs ; but, upon a review of the matters, we may become convinced that it is a mistake and, if so, we can correct this error, without a great deal of trouble."

The contract between the decedent and the defendants is a purely personal one which was dissolved by the death of the de-

cedent and did not bind his legal representatives. The change of the check, therefore, given the decedent in his lifetime and the payment for subsequent deliveries to the parties delivering the pork were made by the defendants at their peril, and if there were nothing else in the case, would justify the direction of the court to find a verdict for the plaintiffs: Dickinson v. Calahan's Admrs., 19 Pa. 227; White's Exrs. v. Comth., 39 Pa. 167.

Letters of administration were issued subsequently to the delivery of the pork and, upon the filing of their account, the administrators were surcharged with the amount of the value thereof, as claimed in the present suit; and, in order to make themselves whole, they instituted this suit, so as to recover from the defendants the value of the pork already paid for by them, on the ground that the payment had been wrongfully made, or at least not rightly made, and that they are, therefore, liable to pay the amount a second time to the present plaintiffs.

It does not clearly appear that either of the administrators had knowledge, at the time, of the delivery of the pork by the widow to the defendants and the payment of the same by them to her, through the parties who delivered it. It would seem, therefore, that the question of neglect on their part, either to compel the widow to account for the money so received or to charge her with it at the time, when she claimed the benefit of the act of 1851, has little significance. The plaintiffs were certainly not guilty of laches in delaying their suit against the defendants until after the hearing before the auditor to whom their account was referred, and the surcharge by him against them of the value of the pork deliverd to the defendants.

We are of the opinion, however, that the defendants' seventh point, namely: "If, from the money received from Eyrich & Brother, the widow of Isaac W. Graham paid the funeral expenses or any other debts properly due by the administrators, thereby relieving the estate from such payments, the defendants should have credit for that amount in this action and be relieved to that extent from the claim of the plaintiffs," should have been affirmed, with the possible qualification "if the estate were solvent or if there were assets of the estate to pay the preferred debts which were paid by the widow."

The widow was in possession of the personal property of the decedent between the time of his death and the granting of letters of administration. As to the disposition of the pork sold

to the defendants she was undoubtedly acting as an administratrix de son tort and, inasmuch as the estate received the benefit of at least a portion of the money paid by the defendants, they should be relieved from the repayment, at least to that extent.

From the dicta contained in Roumfort v. McAlarney, 82 Pa. 193, and Gilfillen's Appeal, 170 Pa. 185, as well as from reason and the general principles of equity, the rule, that executors de son tort are entitled to have credit for valid debts of the decedent actually paid by them out of assets upon which they have intruded, would seem to be plainly deducible; and, if this be so, it follows inevitably that those whose money afforded the relief which the decedent's estate secured by such payment should have the benefit thereof; for, as was said by Mr. Justice GORDON in 82 Pa. 193, supra, "Under such circumstances, the property would have passed into a quasi administration which it would be inequitable to disturb."

There is no injustice to the administrators in this, for, if they had shown before the auditor that the money paid by the defendants and received by the widow had been actually used by her in relief of the decedent's estate, it is safe to say that they would not have been surcharged with the amount. On the other hand, the injustice to the defendants, if there be a balance in the hands of the administrators for distribution, is plainly apparent, when it is considered that of that balance the widow would receive the one third of the amount which she had already wrongfully received from the defendants, although in a sense rightly appropriated to the payment of debts of the decedent.

The amount of the debts of the decedent paid by the widow does not clearly appear, nor does it affirmatively appear by the record that the estate was solvent or that there were sufficient assets to pay even the preferred debts. If the estate were solvent and it affirmatively appeared that the whole of the amount paid by the defendants to the widow had been expended in the payment of the debts of the decedent, it would not be necessary to retry this case; but, inasmuch as we are not definitely informed in regard to these questions, we must send the case back for a retrial. The assignments of error are numerous. We have not discussed them specifically or in detail, but what we have said disposes of the case as fully as seems necessary.

Judgment reversed and a new venire awarded.